# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CYNTHIA A. DIXON,<br><br>Plaintiff,<br><br>v.<br><br>CALUSA INVESTMENTS, LLC,<br>d/b/a NEXT DAY LOAN,<br><br>Defendant. | C.A. No. 06-442 T |

**CALUSA INVESTMENTS, LLC'S MOTION TO DISMISS COMPLAINT**

Calusa Investments, LLC d/b/a Next Day Loans ("Calusa"), through its counsel, respectfully moves this Court pursuant to Fed. R. Civ. P. 12(b)(6) for an Order dismissing plaintiff's individual claims with prejudice because plaintiff's Complaint fails to state a claim upon which relief can be granted. In support of its Motion, Calusa relies on the statements of fact and law contained in the accompanying Memorandum In Support of Motion of Calusa Investments, LLC to Dismiss Complaint, and the accompanying Declaration of Irene C. Freidel, filed herewith.

WHEREFORE, Calusa respectfully requests that the Court: (1) dismiss plaintiff's Complaint, with prejudice, for failure to state a claim upon which relief can be granted; and (2) grant such other relief as the Court deems just and necessary.

**REQUEST FOR ORAL ARGUMENT**

Calusa hereby requests, pursuant to Local Rule 7(e), that the Court hold oral argument on Calusa's Motion to Dismiss. Calusa estimates that oral argument would require not more than one hour of the Court's time.

CALUSA INVESTMENTS, LLC,
d/b/a/ NEXT DAY LOANS

By Its Attorneys,

PARTRIDGE SNOW & HAHN LLP

/s/ Steven E. Snow
Steven E. Snow (#1774)
180 South Main Street
Providence, RI 02903
(401) 861-8200
(401) 861-8210 FAX
ses@psh.com

DATED: December 6, 2006

Of counsel:

R. Bruce Allensworth, Esq.
Irene C. Freidel, Esq.
Brian M. Forbes, Esq.
KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
(617) 261-3100
(617) 261-3175 FAX
ballensworth@klng.com
ifreidel@klng.com
bforbes@klng.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing CALUSA INVESTMENTS, LLC'S MOTION TO DISMISS COMPLAINT was filed with the Clerk of the United States District Court for the District of Rhode Island this 6th day of December, 2006 and is available for viewing and downloading to the following ECF registered counsel of record:

Christopher M. Lefebvre, Esq.
Claude Lefebvre, Esq.

/s/ Steven E. Snow

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

CYNTHIA A. DIXON,
Plaintiff,

v.

CALUSA INVESTMENTS, LLC,
d/b/a NEXT DAY LOAN,
Defendant.

C.A. No. 06-442 T

**MEMORANDUM OF LAW IN SUPPORT OF CALUSA INVESTMENTS, LLC'S MOTION TO DISMISS COMPLAINT**

## I. INTRODUCTION

In this case, plaintiff Cynthia A. Dixon ("plaintiff") seeks damages on behalf of herself and a putative class of New England residents[1] under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, et seq. ("FCRA"), arising from offers of credit that plaintiff and putative class members received in the mail from defendant Calusa Investments, LLC d/b/a Next Day Loans. Specifically, Calusa extended three offers to plaintiff, each of which was for a mortgage loan in the amount of $265,625 to be secured by a lien on plaintiff's residence. Calusa's offers to plaintiff constituted "firm offers of credit" under the plain language of FCRA.

Plaintiff, however, claims that the offers were not "firm offers of credit" within the meaning of 15 U.S.C. § 1681a(*l*) and, therefore, Calusa lacked a "permissible purpose" under 15 U.S.C. § 1681b(c)(1)(B)(I) for prescreening plaintiff's consumer credit data without her consent. In particular, plaintiff alleges that the offers of credit she received from Calusa were not "firm offers" within the meaning of FCRA because they allegedly were a "sham" and lacking in material terms. Complaint at para. 31. Because she has not suffered actual damages, plaintiff

1 The putative class consists of residents in Rhode Island, Massachusetts, New Hampshire and Maine. Complaint at para. 4.

claims that Calusa's alleged violation of Section 1681b of FCRA was "willful" so that she may obtain statutory damages on her behalf and on behalf of the class in an amount ranging from $100 to $1,000. See 15 U.S.C. § 1681n.[2]

For the reasons stated below, the Complaint should be dismissed because Calusa's offers for mortgage loans were "firm offers of credit" – on their face – in compliance with FCRA.

## II. SUMMARY OF ALLEGATIONS IN THE COMPLAINT AND OFFERS ATTACHED AS EXHIBITS A THROUGH C TO COMPLAINT

Plaintiff's Complaint, dated October 10, 2006 ("Complaint"), contains the following allegations. Plaintiff received Calusa's offers of credit attached as Exhibits A through C to the Complaint during the two years preceding the filing of this action. Complaint at para. 10. Plaintiff did not authorize Calusa to access or use her consumer report, and plaintiff did not initiate a credit transaction with Calusa. Id. at paras. 22, 24. Plaintiff alleges that the offers attached as Exhibits A through C to the Complaint do not constitute "firm offers of credit," because, according to plaintiff, they are "a sham, excessively vague and totally lacking in terms." Id. at para. 31. Thus, according to plaintiff, Calusa did not have a permissible purpose to "access plaintiff's consumer report without plaintiff's consent." Id. at paras. 30-31.

The Complaint acknowledges, however, that Calusa is a "licensed lender," Complaint at para. 9, and it excludes from the class individuals who responded to Calusa's offer of credit and obtained credit from Calusa. Id. at para. 4. The Complaint further acknowledges that a "permissible purpose" for accessing consumer credit data without authorization is to "extend a firm offer of credit or insurance to the consumer, even where this has not been requested by the consumer." Id. at para. 29.

2 FCRA does not allow statutory damages for negligent violations.

On their face, each of the offers, attached as Exhibits A through C to the Complaint, are firm offers of credit. They were addressed to plaintiff and each states that plaintiff has been "pre-selected" for an adjustable rate mortgage loan in the substantial amount of $265,625.00. See Exhibits A through C to Complaint. The offer includes the following additional explicit terms: [3]

- interest rate of 7.99% (subject to variation based on credit history and other factors);
- 30 year term;
- Annual Percentage Rate ("APR") of 10.546% (origination fees and closing costs are included in the APR but may vary by state).

See Exhibits A through C to Complaint.

The offers place no restrictions on how plaintiff may use the proceeds of any loan she obtained from Calusa. Id. For example, the offers state that plaintiff could use the proceeds of any loan she obtained "for home improvements, to buy a car or to use for any purpose." Exhibits A and C to Complaint. Exhibit B to the Complaint states that "[w]ith a Next Day Loan*, you could pay off your high interest credit cards, make one lower monthly payment and take out cash to spend however you wish." Exhibit B to Complaint.

On their face, the offers also set forth examples to assist the consumer in comparing his or her existing debt to the savings the consumer could achieve with the loan offered by Calusa. Id. In addition, the consumer is provided with Calusa's telephone number and web-site address if the consumer were interested in obtaining more information from Calusa regarding the terms of the offer. Id.

With respect to the "opt-out" notice, each offer states:

> PRESCREEN & OPT OUT NOTICE
> This 'prescreened' offer of credit is based on information in your credit report indicating that you meet certain criteria. This offer is not guaranteed if you do not meet our

---

[3] Exhibits A through C to the Complaint contain substantially identical terms, despite the fact that their layout and appearance differ slightly and each offer reflects a different date. Exhibit A is dated August 21, 2006; Exhibit B is dated August 28, 2006; and Exhibit C is dated September 4, 2006.

> employment, credit, income and collateral criteria. If you do not want to receive prescreened offers of credit from this and other companies, call the consumer reporting agencies toll free at 1-888-567-8688; or write:
>
> | | | |
> |---|---|---|
> | TransUnion LLC<br>Attn: Marketing Opt-Out<br>P.O. Box 97328<br>Jackson, MS 39288-7328 | Equifax Information<br>Service Center<br>P.O. Box 105873<br>Atlanta, GA 31348 | Experian<br>P.O. Box 2104<br>Allen, TX 75013-2104 |

Id. Finally, the Calusa offers contain the following statement:

> *OFFER TERMS AND CONDITIONS
>
> You received this offer because you satisfied our initial criteria for creditworthiness. This offer is contingent on our receiving a valid first or second lien on an owner-occupied one to two family residence, excluding mobile homes, manufactured homes and co-ops, with a value that is within our minimum and maximum property value requirements. An appraisal of your residence may be required. This offer is subject to minimum and maximum loan amounts. Approval is subject to verification of employment and acceptable income, credit history and collateral. This offer may not be extended if, after responding to this offer, it is determined that you no longer meet the criteria used to select you for this offer or other specific criteria bearing on your creditworthiness in effect at the time of this mailing.

Id.

In summary, Calusa extended three, legitimate written offers of credit to plaintiff each of which clearly stated that plaintiff was pre-selected based on information in her credit report and that she would receive such credit if (a) she continued to meet Calusa's pre-established creditworthiness criteria; and (b) she put up appropriate collateral for the loan. As explained below, plaintiff's claim that the offers are not "firm offers of credit" has no basis in the Complaint and should be dismissed.

## III. STANDARD OF REVIEW

This Court may dismiss plaintiff's claim with prejudice if it is shown that plaintiff has failed "to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). While the Court, deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "must take all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff," Rivera v.

Rhode Island, 312 F. Supp. 2d 175, 177 (D.R.I. 2004) (Torres, J.) (dismissing complaint), the First Circuit has noted that a Court need not credit plaintiff's "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). See also Rivera-Lebron v. Cellular One, 13 F. Supp. 2d 235, 238 (D.P.R. 1998) (dismissing claims under the FCRA). Accordingly, dismissal is appropriate if "it is clear from the allegations in the complaint that the plaintiff will be unable to prove facts sufficient to support the claim for relief." See Rivera v. Rhode Island, 312 F. Supp. 2d at 177.

Exhibits attached to the Complaint are properly considered part of the pleading for purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). See Fed. R. Civ. P. 10(c). Indeed, as is the case here, "[a] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." In re Wade, 969 F.2d 241, 249 (7th Cir. 1992); See also Blackstone Realty LLC v. Fed. Deposit Ins. Corp., 244 F.3d 193, 195 (1st Cir. 2001) (stating that written offer attached to Complaint is considered part of the pleading for purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6)). As set forth below, plaintiff has failed to allege any facts that support her claim for relief.

## IV. ARGUMENT

Calusa's offers to plaintiff – on their face – satisfy FCRA because (1) they offered legitimate credit products (i.e. mortgage loans); (2) plaintiff received the offers, as stated therein, because information in her credit report indicated that she satisfied Calusa's pre-selected criteria bearing on creditworthiness; and (3) the offers were conditioned on plaintiff's continued satisfaction of collateral requirements and creditworthiness criteria. Moreover, even though not required by the statute, the offers expressly state all material terms, including interest rate, term, APR, and amount of credit available. Thus, under both FCRA and the burgeoning case law in this area, discussed below, Calusa's offers to plaintiff plainly fit within FCRA's criteria for "firm

offers of credit," and thus Calusa had a "permissible purpose" to prescreen plaintiff's consumer credit data.

Nonetheless, plaintiff has filed this case, and a number of others,[4] in an effort to exploit the Seventh Circuit's decision in Cole v. U.S. Capital, Inc., 389 F.3d 719 (7th Cir. 2004). The Cole decision, however, is factually distinct from this case in several important ways, and it is not binding on this Court. Even if Cole applies, however, Calusa's offers satisfy Cole's "value" test because they are not "sham" offers designed to sell a consumer product, they are offers for legitimate credit products.

In short, plaintiff should not be permitted to sustain a costly putative class action against Calusa based on nothing more than the bare allegations that (1) the offers are a "sham," (Complaint at para. 5) and (2) Calusa's alleged violation of FCRA was "willful" (id. at para.33). This is particularly true where the offers on their face comply with FCRA.

**A. The Statutory Definition Of "Firm Offer Of Credit"**

Congress enacted FCRA to require consumer reporting agencies to maintain and provide accurate consumer credit information with due regard to the "consumer's right to privacy." See 15 U.S.C. § 1681(a)(4). One of FCRA's intended purposes is to strike a balance between consumers' interest in the privacy of their personal credit information and the benefit that flows from business's ability to access credit information for the purposes of offering financial products to the general public. See S. Rep. No. 103-209, at *13 (1993). In striving toward such balance, FCRA expressly permits companies like Calusa to access some of a consumer's credit information without the consumer's prior consent under certain, enumerated circumstances. See 15 U.S.C. § 1681b. Specifically, Section 1681b of FCRA permits the

---

4 This case is one of many putative FCRA "firm offer" class actions recently filed in this jurisdiction and others by plaintiff's counsel. This recent spate of cases follows approximately 150 other such cases filed by counsel in other jurisdictions, particularly within the Seventh Circuit. Most of these costly cases have been filed against

furnishing of consumer information "in connection with any credit or insurance transaction that is not initiated by the consumer only if. . . the transaction consists of a firm offer of credit." 15 U.S.C. § 1681b(c)(1)(B)(i). FCRA defines a "firm offer of credit" as:

> any offer of credit . . . to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer, except that the offer may be further conditioned on one or more of the following:
>
> (1) The consumer being determined, based on information in the consumer's application for the credit or insurance, to meet specific criteria bearing on credit worthiness or insurability, as applicable, that are established—
>
> (A) before selection of the consumer for the offer; and
>
> (B) for the purpose of determining whether to extend credit or insurance pursuant to the offer.
>
> (2) Verification
>
> (A) that the consumer continues to meet the specific criteria used to select the consumer for the offer, by using information in a consumer report on the consumer, information in the consumer's application for the credit or insurance, or other information bearing on the credit worthiness or insurability of the consumer; or
>
> (B) of the information in the consumer's application for the credit or insurance, to determine that the consumer meets the specific criteria bearing on credit worthiness or insurability.
>
> (3) The consumer furnishing any collateral that is a requirement for the extension of the credit or insurance that was--
>
> (A) established before selection of the consumer for the offer of credit or insurance; and
>
> (B) disclosed to the consumer in the offer of credit or insurance.

15 U.S.C. § 1681a(*l*).

---

legitimate companies that market their credit products through mailers as permitted by FCRA and as recognized by the government agencies charged with regulating the statute.

Because FCRA permits the extension of a "firm offer of credit" without a consumer's prior consent, the statute limits the type of information a lender may obtain in connection with the prescreening process that precedes the extension of a "firm offer of credit." See 15 U.S.C. § 1681b(c)(2); see also Kennedy v. Chase Manhattan Bank USA, NA, 369 F.3d 833, 841 (5th Cir. 2004) (upholding dismissal where lender extended a "firm offer of credit" to plaintiffs). Specifically, when a lender extends a "firm offer of credit" it is only permitted to know: (1) the consumer's name and address; (2) a non-unique identifier that may be used solely for the purpose of verifying the identity of the consumer; and (3) "other information pertaining to a consumer that does not identify the relationship or experience of the consumer with respect to a particular creditor or other entity." 15 U.S.C. § 1681b(c)(2).

In light of the fact that FCRA requires lenders to extend "firm offers of credit" based on limited information, it follows that a "firm offer of credit" under FCRA does not mean that the recipient is guaranteed to receive credit. The term is defined as "any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer." 15 U.S.C. § 1681a(*l*) (emphasis added). FCRA expressly recognizes that a creditor, after making a firm offer of credit but prior to extending credit, will receive an application from the consumer, obtain information regarding the consumer's collateral, and verify that the consumer continues to meet the creditor's prescreening criteria. See 15 U.S.C. § 1681a(*l*)(1)-(3); See also Kennedy, 369 F.3d at 841.

Thus, FCRA departs from the common law contract concept of an "offer," that is, something capable of acceptance. As stated above, FCRA expressly recognizes that a "firm offer of credit" is actually a conditional offer that may be withdrawn for various reasons. Indeed, as one court has observed a "firm offer of credit" under FCRA "really means a 'firm offer if you

meet certain criteria.'" Kennedy, 369 F.3d at 841; see also Soroka v. Homeowners Loan Corp., Case No. 8:05cv2029-T-17MAP, 2006 U.S. Dist. LEXIS 38847 at *14 (M.D. Fla. June 12, 2006) (stating that "[a]n offer of credit to a particular consumer is firm only if the consumer actually meets and continues to meet the criteria which form the basis of the offer. It is an offer made in the present, based on information known by the offeror, subject to later verification").

The Federal Reserve Board, the agency charged with implementing and enforcing FCRA, expressly recognizes the salutary benefits of firm offers of credit:

> Prescreened solicitations significantly benefit consumers by providing them with ready access to product information on credit and insurance products for which they likely qualify. Thus, prescreened offers help consumers by greatly reducing the time and effort necessary for shopping these products. Also, the widespread dissemination of pricing and product information contained in prescreened offers helps to make markets for these products more competitive, a result that benefits all consumers whether or not they engage in extensive shopping themselves.

See Fed. Reserve Bd., Report to the Congress on Further Restrictions on Unsolicited Written Offers of Credit and Insurance at 28 (Dec. 2004) (attached as Exhibit A to Declaration of Irene C. Freidel, dated December 4, 2006 ("Friedel Decl."). Further:

> Many companies have found that prescreening improves marketing efficiency… [I]n a competitive market, these market efficiencies and better control of risks result in lower prices, more product choices, and wider credit and insurance availability to consumers, including those traditionally underserved. Consumers further benefit by the receipt of fewer solicitations that do not match their credit or insurance circumstances.

Id. at 10

**B. On Their Face, Calusa's Offers For Mortgage Loans Are "Firm Offers Of Credit" Within The Meaning Of FCRA**

To establish a valid FCRA claim against Calusa, plaintiff must allege a reasonable basis for the Court to find that Calusa accessed her credit information for an impermissible purpose not authorized by FCRA. There are no allegations in the Complaint that support any finding that Calusa was motivated by an impermissible purpose when it arranged for plaintiff's

credit data to be prescreened. Indeed, the Complaint alleges that Calusa is "a licensed lender." Complaint at para. 3.

A comparison of the statutory definition of "firm offer of credit" with Calusa's offers of credit demonstrate that Calusa's offers meet the statutory definition:

| **FCRA's Definition of "Firm Offer"** | **Calusa's Offers to Plaintiff** |
|---|---|
| "any offer of credit or insurance" | An adjustable rate mortgage loan of $265,625.00 |
| "to a consumer" | Cynthia A. Dixon |
| "that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer, except that the offer may be further conditioned on one or more of the following:"<br><br>(1) consumer meets specific criteria bearing on credit worthiness;<br><br>(2) verification that consumer continues to meet the specific criteria bearing on credit worthiness;<br><br>(3) consumer furnishes any collateral that was required, pre-established, and disclosed in the offer. | "This 'prescreened' offer of credit is based on information in your credit report indicating that you meet certain criteria. This offer is not guaranteed if you do not meet our employment, credit, income and collateral criteria…. You received this offer because you satisfied our initial criteria for creditworthiness. This offer is contingent on our receiving a valid first or second lien on an owner-occupied one to two family residence, excluding mobile homes, manufactured homes and co-ops, with a value that is within our minimum and maximum property value requirements. An appraisal of your residence may be required. This offer is subject to minimum and maximum loan amounts. Approval is subject to verification of employment and acceptable income, credit history and collateral. This offer may not be extended if, after responding to this offer, it is determined that you no longer meet the criteria used to select you for this offer or other specific criteria bearing on your creditworthiness in effect at the time of this mailing." |

See 15 U.S.C. § 1681a(*l*). Calusa's offers for mortgage loans to plaintiff plainly meet the statutory requirements for a "firm offer of credit."[5]

[5] Plaintiff does not allege that Calusa would have declined to extend credit to plaintiff had she applied for the credit product that Calusa offered her. See Bonner v. CorTrust Bank N.A., 2006 U.S. Dist. LEXIS 47410 at *16 ("[a]t the outset, we note that the Plaintiffs do not allege that CorTrust would not have honored the offers should the Plaintiffs have chosen to accept them").

### C. Calusa's Offers For Mortgage Loans Are "Firm Offers Of Credit" In Light Of Recent, Relevant Case Law

Many courts around the country that have reviewed offers for mortgage loans or other credit products – based on allegations identical to the allegations in the Complaint against Calusa – have found the offers to be "firm offers of credit" and have dismissed the plaintiffs' claims. Even though FCRA does not require that all material terms be included in the offer,[6] many of the cases assessing offers of credit considered this issue on motions to dismiss. Few, if any, of the offers addressed by the cases described below and deemed to be "firm offers of credit" within the meaning of FCRA are as detailed or informative as Calusa's offers to plaintiff.

For example, in a "firm offer" case filed in Florida, the district court held that a "firm offer of credit" was extended where the offer at issue – in contrast to Calusa's – contained few material terms and plaintiff – just as plaintiff here – alleged the offer was a "sham." See Soroka v. Homeowners Loan Corp., Case No. 8:05cv2029-T-17MAP, 2006 U.S. Dist. LEXIS 38847 at *9 (M.D. Fla. June 12, 2006) (granting defendant's motion to dismiss). In Soroka, the defendant offered a $55,000 secured home loan to be used "for any purpose." Soroka, 2006 U.S. Dist. LEXIS 38847 at *9. Even though the offer in Soroka did not include an interest rate and term on its face, the court stated:

> Every consumer and every lender has a common understanding that home loans are made for a definite period of time, that banks charge interest for lending money, and that interest rates are subject to change. Lenders charge the highest rate that the market will bear, and consumers obtain the lowest rate justified by their credit information, which involves an assessment of risk as to that individual consumer by the lender. The value of the property which secures the loan is another critical piece of information as to the amount of the loan that may be extended. This mutual

---

6 Nothing in FCRA requires that a "firm offer of credit" be made in a single document containing all terms material to the offer. See 15 U.S.C. § 1681a(*l*). There is also no requirement in FCRA that a firm offer of credit be made in writing. See Commentary on the Fair Credit Reporting Act, 55 Fed. Reg. 18,804, 18,807, n.16 (May 4, 1990) (stating that "a prescreened list is subject to FCRA, regardless of the medium through which the client that ordered it solicits consumers"). Indeed, a firm offer of credit may be made entirely over the telephone or over the Internet. See Exhibit A to Freidel Decl.

> understanding is inherent in the lending process as to loans secured by a consumer's home.

Soroka, 2006 U.S. Dist. LEXIS 38847, *10.[7] Based upon the "entire context of the offer …, including the parallel between the conditions stated within the offer and the statutory conditions," the Sokora court concluded that the offer was a "firm offer of credit" and not a "sham offer." Id. at *13 (emphasis added). Precisely the same "parallel" exists here.

In Putkowski v. Irwin Home Equity Corp., 423 F. Supp. 2d 1053 (N.D. Cal. 2006), the court also rejected the same claim that plaintiff asserts in this case, namely that FCRA requires "firm offers of credit" to contain sufficient material terms to convey value to the consumer. See Putkowski, 423 F. Supp. 2d at 1056. There, the defendant offered plaintiff a loan within the range of "$15,000 to $300,000" and stated, among other things, that the APR would vary from "5.65% to 16.9%." Id. Calusa's offers, by contrast contain definite terms (i.e. adjustable rate mortgage loan of $265,625.00, 7.99% interest rate, 360 month term and 10.546% APR), which apprise plaintiff of precisely the type of loan she could receive if she satisfies the criteria to which Calusa's offers are subject. See Complaint Exhibits A through C.

In another recent case, Poehl v. Countrywide Home Loans, Inc., No. 4:06CV928 at *5 (E.D. Mo. Nov. 1, 2006) (slip op.) (Exhibit C to Freidel Decl.), the court reasoned that nothing in FCRA requires a lender to include particular terms in a "firm offer of credit" to comply with FCRA. In that case, the defendant offered plaintiff a mortgage loan of $93,500, although the offer stated that the actual amount of a loan could be greater or less than that amount. Id at *11. The plaintiff in Poehl, like plaintiff in this case, argued that the Court needed

---

[7] In the case of Holloway v. Home Loan Ctr, Inc., No. 2:06-cv-01068 at *5-6 (C.D. Cal. July 18, 2006) (Exhibit B to Freidel Decl.), a district court in California concluded that a firm offer of credit was made where the offer stated that "interest rates are subject to approval" and it was conditioned on previously established criteria bearing on credit-worthiness and verification of income and collateral. The court found that the conditional nature of the offer was expressly permitted by FCRA. Id at 5-6 (citing 15 U.S.C. § 1681a(*l*)).

to include particular terms in order to convey sufficient value to the consumer to comply with FCRA. In rejecting the plaintiff's argument, the Court stated that "Congress crafted its definition of 'firm offer' and chose not to require that the lender specify particular loan terms." Id.

In Bonner v. Cortrust Bank N.A., No. 2:05-cv-137, 2006 U.S. Dist. LEXIS 47410 (N.D. Ind., July 12, 2006) (Simon, J.), appeal docketed, No. 06-3196 (7th Cir. Aug. 14, 2006), the court granted defendant's motion for judgment on the pleadings finding that the defendant had extended a firm offer of credit where the amount of credit offered was $75.00. There, plaintiffs had received pre-screened offers for credit based on information in their credit report. Bonner, 2006 U.S. Dist. LEXIS 47410 at *4. The offer contained numerous specific terms such as the interest rate, the precise amount of credit offered and the method used to calculate interest. Id. At * 5-6. The court concluded that the defendant's "mailers contain sufficient information for the court to determine, as a matter of law, that the offers constitute 'firm offers of credit' as defined by FCRA." Id. at *20.

In Murray v. HSBC Auto Fin., Inc., No. 1:05-cv-04040 2006 WL 2861954 (N.D. Ill. Sep. 27, 2006), an Illinois federal district court found the existence of a firm offer of credit and granted summary judgment even where the offer lacked definite terms and was explicitly conditioned upon certain collateral requirements. The mailer at issue in HSBC was an offer to refinance an automobile loan with a rate and terms that could vary based on the applicant's creditworthiness. Murray, at *1. The offer was also conditioned upon the applicant providing collateral of an automobile that met maximum mileage, model year and other conditions. Id. Like Calusa's offers, to aid consumers in understanding the value of the offer, the mailer contained a description of a sample loan in which a typical consumer might save $2,728.32 over 56 months. Id. at *3. Finally, the offer invited consumers to call a number to obtain additional income and collateral information and obtain a quote. Id. at *2.

In granting summary judgment, the HSBC court noted that nothing in FCRA or its legislative history requires the inclusion of specific loan terms. Id at 4. The Court further noted that in the context of an auto loan, like a home mortgage refinance, the specific terms of the loan depend greatly on the specific collateral information that the consumer provides at the time of their application for credit. Id.

In Kennedy v. Chase Manhattan Bank USA, NA, 369 F.3d 833 (5th Cir. 2004), the Fifth Circuit affirmed the dismissal of claims, similar to those here, because the defendant complied with the plain language of FCRA in extending a "firm offer of credit." In that case, the plaintiffs alleged that the defendant violated FCRA when it sent plaintiff's "pre-approved" offers of credit and subsequently declined to extend credit. After analyzing the nature of prescreened offers under FCRA, the court relied exclusively on the extensive statutory definition of "firm offer of credit" in the statute, to conclude that the plaintiffs failed "to state a claim under the [FCRA] because [defendants] clearly establish that the respective offers constitute firm offers of credit under the [FCRA]." Kennedy, 369 F.3d at 841.

In Gamble v. Citifinancial, No. 3:02cv693, 2002 WL 31643028 (D. Conn. Nov. 19, 2002), the district court dismissed a complaint in which the plaintiff disputed that FCRA permitted lenders to send prescreened offers of credit. In dismissing plaintiff's claim, the court determined that it could establish the existence of a "firm offer of credit" as a matter of law by reference to the attachments to the Complaint, and that plaintiff's claim lacked merit. The Court stated that:

> [t]aken together, the documents appended to plaintiff's complaint and thus incorporated clearly reveal that: 1) [plaintiff] was offered a pre-approved loan for $5,500 based on information in her consumer credit report; 2) [plaintiff] received the offer because, based on information in her consumer report, she satisfied the specific criteria generally used to select consumers to receive the offer; 3) the loan offer was further conditioned on plaintiff being determined, based on information in her response to the offer, to meet specific criteria bearing on credit worthiness (including,

> among other things, actually having the credit qualifications on which the offer was based, being the owner of residential real estate property in which one lives, and having a minimum verifiable annual income of $20,000); and 4) such further conditions were established before the selection of plaintiff for the offer and for the purpose of determining whether to extend credit pursuant to the offer. Accordingly, defendants' pre-approved offer of credit is a 'firm offer' as defined by the FCRA, and, as such, defendants were permitted by FCRA to obtain plaintiff's credit information without her knowledge or consent and to use such information

Gamble, 2002 WL 31643028 at *3.

In short, under FCRA and relevant cases interpreting its "firm offer of credit" provisions, the Court may readily conclude that Calusa's offers comply with FCRA. Specifically, Calusa's offers (1) contain an offer of credit; (2) clearly state that they are based on information obtained from plaintiff's credit report; and (3) are conditioned on verification of plaintiff's creditworthiness and on plaintiff's ability to provide sufficient collateral. See Id at 841; see also 15 U.S.C. § 1681a(*l*). As such, Calusa's offers are "firm offers of credit" within the meaning of FCRA. The Court need look no further than the offers themselves (Exhibits A-C to the Complaint) to reach this conclusion.

### D. Cole v. U.S. Capital Is Inapposite

While FCRA allows credit providers and insurers to access credit reports without consent to make a "firm offer" for a credit product, some companies abuse the exception by sending mailers to potential customers for the purpose of marketing cars and other consumer products (not credit products) and including a nominal credit offer to justify prescreening credit data. This was the case in Cole v. U.S. Capital, 389 F.3d 719.

In Cole, the Seventh Circuit considered whether the plaintiff had adequately plead in her complaint a claim that the defendants had violated FCRA by accessing the plaintiff's credit report without making a firm offer of credit. The promotional material sent to the plaintiff offered her a $300 line of credit useable only towards the purchase of a car and an opportunity to

obtain a credit card. 389 F.3d at 722-23. The defendants argued that an "offer of credit" was "firm" within the meaning of FCRA as long as "some amount of credit – however small – is guaranteed." Id. at 726. In other words, the defendants argued that they could access consumers' credit reports permissibly as long as they guaranteed some amount of credit, even as low as $1. Id.

The Seventh Circuit rejected the defendants' argument stating that it

> would permit anyone to gain access to a sea of sensitive information simply by offering some nominal amount of guaranteed credit. The statutory scheme of the FCRA makes clear that a "firm offer" must have sufficient value for the consumer to justify the absence of the statutory protection of his privacy. A definition of "firm offer of credit" that does not incorporate the concept of value to the consumer upsets the balance Congress carefully struck between a consumer's interest in privacy and the benefit of a firm offer of credit for all those chosen through the pre-screening process. From the consumer's perspective, an offer of credit without value is the equivalent of an advertisement or solicitation. It is clear that Congress did not intend to allow access to consumer credit information "for catalogs and sales pitches."

389 F.3d at 726-27 (quoting Trans Union Corp. v. F.T.C., 267 F.3d 1138, 1143 (D.C. Cir. 2001)). Significantly, the Court stated that, to determine whether a "firm offer of credit" is bona fide, a court must consider the "entire context" of the offer:

> To determine whether the offer of credit comports with the statutory definition, a court must consider the entire offer and the effect of all the material conditions that comprise the credit product in question. If, after examining the entire context, the court determines that the "offer" was a guise for solicitation rather than a legitimate credit product, the communication cannot be considered a firm offer of credit.

389 F.3d at 727-28 (emphasis in original).

In short, the Seventh Circuit in Cole appears to have developed its "value" test to help the factfinder determine whether the offer is for credit, or simply a "sales pitch" for a consumer product. The Court need not, and should not, adopt Cole. Cole's "value" test is not derived from the language of FCRA, and it is not required by the statute. Moreover, as stated

above, nothing in FCRA requires that all materials terms of the offer be included in the mailer to the consumer. As the court in Putkowski stated, "[t]he text of the FCRA does not support plaintiffs' suggestion that a firm offer of credit cannot contain a range of credit or interest rates, or that it must be of sufficient 'value' when judged by a later arbiter." 423 F. Supp. 2d at 1060 (rejecting the holding in Cole v. U.S. Capital, Inc., 389 F.3d 719 (7th Cir. 2004)).

Moreover, the Seventh Circuit's more recent decision in Perry v. First Nat'l Bank, 459 F.3d 816 (7th Cir. 2006), confirms that the central issue in assessing whether an offer is a "firm offer of credit" is simply whether the offer is for a consumer product versus a credit product. In Perry, the Seventh Circuit upheld a district court's finding of the existence of a "firm offer of credit" where the defendant offered the plaintiff a credit card with a $300 limit, a definite interest rate and no restrictions on the usage of the credit product offered. See id. at 825. In reaching its conclusion that the $300 credit offer was a "firm offer of credit," the Court noted that, like Calusa's offers to plaintiff, "the only product [defendant] offered was a credit line." Id.

Further, the facts of Cole are entirely inapposite to the offers at issue here. There is no question in this case – and no factual allegation – that Calusa was offering anything to plaintiff other than a legitimate credit product. Even if Cole's "value" test applied to Calusa's offers, the offers pass the test with flying colors. Plaintiff cannot reasonably argue that an offer for a mortgage loan in the definite and substantial amount of $265,625.00 does not have value. Further, unlike in Cole, Calusa's mailers contain numerous material terms, including a substantial and definite offer of $265,625.00, an interest rate of 7.99%, a 30-year term, an APR of 10.546%, an opt-out notice, and a statement of terms and conditions. The offers also contain a comparison between the likely average debt of the consumer and the manner in which Calusa's loan could assist the consumer in consolidating the debt and lowering monthly payments. In

short, there is no similarity between the offer in Cole and Calusa's offers at issue here, which plainly comply with FCRA's requirements as offers for legitimate credit products.

### E. Plaintiff Has Alleged No Factual Allegations To Support A Willful Violation Of FCRA

Plaintiff has not – and cannot – allege actual damages, meaning her only chance for recovery in this case is if she establishes willful noncompliance with FCRA. See 15 U.S.C. § 1681n. "To be found in willful noncompliance, a defendant must have knowingly committed an act in conscious disregard for the rights of others." Richardson v. Fleet Bank, 190 F. Supp. 2d 81, 89 (D. Mass. 2001) (finding no willful violation of FCRA occurred).

Plaintiff alleges no facts to satisfy FCRA's exacting standard for willfulness. In fact, plaintiff's only allegation on willfulness is the conclusory allegation in Paragraph 33 of the Complaint ("[d]efendant willfully violated the FCRA."). Absent any factual allegations to support this bald legal conclusion, the claim should be dismissed. Aulson, 83 F.3d at 3. See also Wilson v. Academic Fin. Solutions, No. 05-40361, 2006 WL 3043245 (E.D. Mich. Oct. 23, 2006) (slip. op.) (dismissing FCRA claim where "even given the most liberal reading, Plaintiff's complaint consists of nothing more than a partial restatement of the elements of a violation of the FCRA, couched as legal conclusions").

Plaintiff has failed to allege a violation of FCRA, let alone a "willful" violation. Calusa is a licensed lender that sent plaintiff substantial offers of credit (i.e. an adjustable rate mortgage loan of $265,625.00). Complaint at paras. 9; 14; Exhibits A through C to Complaint. Far from alleging a violation of FCRA, plaintiff has alleged that Calusa has done precisely what it is permitted to do under the FCRA, namely send plaintiff an offer of credit based on pre-screened information in her credit report. This is hardly the stuff of a willful violation. Plaintiff's claim should be dismissed.

## V. CONCLUSION

Calusa's offers to plaintiff constitute "firm offers of credit" under FCRA. Accordingly, plaintiff has failed to state a claim upon which relief can be granted. Plaintiff's claim should be dismissed in its entirety.

CALUSA INVESTMENTS, LLC,
d/b/a/ NEXT DAY LOANS

By Its Attorneys,

PARTRIDGE SNOW & HAHN LLP

/s/ Steven E. Snow
Steven E. Snow (#1774)
180 South Main Street
Providence, RI 02903
(401) 861-8200
(401) 861-8210 FAX
ses@psh.com

DATED: December 6, 2006

Of counsel:

R. Bruce Allensworth, Esq.
Irene C. Freidel, Esq.
Brian M. Forbes, Esq.
KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
(617) 261-3100
(617) 261-3175 FAX
ballensworth@klng.com
ifreidel@klng.com
bforbes@klng.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF CALUSA INVESTMENTS, LLC'S MOTION TO DISMISS COMPLAINT was filed with the Clerk of the United States District Court for the District of Rhode Island this 6th day of December, 2006 and is available for viewing and downloading to the following ECF registered counsel of record:

Christopher M. Lefebvre, Esq.
Claude Lefebvre, Esq.

/s/ Steven E. Snow

889833_1/5629-2