# EXHIBIT C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CLAYTON R. POEHL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:06CV928 CDP |
| | ) | |
| COUNTRYWIDE HOME LOANS, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Homeowners Loan Corp. mailed Clayton Poehl a flyer stating that he had been pre-selected for a $92,500 loan. Poehl alleges that Homeowners violated his rights under the Fair Credit Reporting Act because it obtained information about his credit without his consent in order to send him the mailing. Homeowners moves to dismiss, arguing that it was allowed to access Poehl's credit information because the flyer constituted a "firm offer of credit" as defined by the Act. I agree that the Homeowners' offer had some value to the consumer, so it was a "firm offer of credit" as Congress used the term in the Act. Homeowners cannot be liable to Poehl for obtaining his credit information for this purpose, and so I will grant the motion to dismiss.

## I. Background

The complaint alleges that in 2005 or 2006, Clayton Poehl received a "prescreened" promotional letter from Homeowners. Poehl alleges that Homeowners accessed his credit report without his consent to obtain the information for this prescreening. The front side of this letter states in relevant part:

> Congratulations! You've been pre-selected* for $92,500* from Homeowners Loan Corp. Call . . . and use this money, upon final approval, to do whatever you want: . . .
>
> Just call . . . now for your FREE, **no obligation loan consultation.**

(emphasis in original). It goes on to say that a loan can be made available even "if you have had credit problems in the past . . ." The asterisk directs the reader to "See back of letter for details." The reverse side of the mailer sets forth additional restrictions and conditions, including:

> This offer is conditioned on the re-verification of your credit information used in making you this offer, the satisfaction of Homowners Loan Corp's other credit, income, and collateral requirements. The collateral requirements include the eligibility of the subject property, Homeowner Loan Corps' loan-to-value limitations, the insurability of Homeowners Loan Corp's liens, and the insurability of the subject property against hazards and/or flood damage. Your pre-selected loan amount is based on 75% of the average loan balance for previous loan originations at this Branch Office. Actual loan amount may be more or less.

The mailing does not specify the interest rate or any other specific terms of the proposed loan.

## II. Motion to Dismiss Standard

Homeowners has moved to dismiss this case for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P. The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim entitling it to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Young v. City of St. Charles, Mo., 244 F.3d 623, 627 (8th Cir. 2001). When considering a motion pursuant to Rule 12(b)(6), I must assume that the factual allegations of the complaint are true and must construe those facts in favor of the plaintiff. Neitzke v. Williams, 490 U.S. 319, 326 (1989).

When ruling on a motion to dismiss, a court must primarily consider the allegations contained in the complaint, but other matters referenced in the complaint may also be taken into account. Deerbrook Pavilion, LLC, v. Shalala, 235 F.3d 1100, 1102 (8th Cir. 2000). "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c). Because the mailer is attached as an exhibit to Poehl's complaint, I may consider its terms in ruling on the motion to dismiss. See Centers v. Centennial Mortg.,

Inc., 398 F.3d 930, 933 (7th Cir. 2005) ("[A] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to relief.").

## III. Discussion

Congress passed the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., to preserve consumer privacy in the information maintained by consumer reporting agencies. See § 1681(a)(4) ("There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy"). The act sets out certain permissible purposes for which a consumer reporting agency may release credit reports and prohibits other releases. § 1681b(a). Most of the permissible purposes involve situations where the consumer has authorized or initiated the release, but there are exceptions.

One of the exceptions allows a credit provider to access consumer information in order to make a "firm offer of credit." 15 U.S.C. § 1681b(c)(1)(B)(i). This provision enables a credit provider such as Homeowners to provide certain criteria to a credit agency and then to receive – without the consumers' consent – basic contact information about consumers who meet those criteria. The exception does not allow a potential lender to access the full credit

report, but instead allows it to obtain the consumer's name, address, and other information that does not identify any particular past credit transaction of that consumer.

In creating this exception, Congress allowed lenders such as the defendant to access credit reports for the purpose of making unsolicited mailings to consumers, so long as the lender actually offered the consumer something, that is, so long as the lender made a "firm offer of credit." As one court has noted, Congress "balanced any privacy concerns created by pre-screening with the benefit of a firm offer of credit or insurance for all consumers identified through the screening process." Cole v. U. S. Capital, Inc., 389 F.3d 719, 725 (7th Cir. 2004) (quoting S. Rep. No. 103-209, 13 (1993)). "Congress apparently believes that people are more willing to reveal personal information in return for guaranteed offers of credit than for catalog and sales pitches." Trans Union Corp. v. FTC, 267 F.3d 1138, 1143 (D.C. Cir. 2001).

Congress, however, did not specify what, if any, credit terms had to be included for something to be a "firm offer." The statute does not say that the loan amount, interest rate, or a payback period be stated. Instead, the FCRA defines "firm offer of credit" as "any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report

on the consumer, to meet the specific criteria used to select the consumer for the offer." 15 U.S.C. § 1681a(l). The statute provides that the offer may be conditioned on three specific requirements. First, the creditor may apply additional pre-selection criteria relating to the consumer's creditworthiness. § 1681a(l)(1). Second, the offer may be conditioned on verification "that the consumer continues to meet the specific criteria used to select the consumer for the offer." § 1681a(l)(2). Finally, the firm offer may be conditioned on the consumer's furnishing any collateral that was established before the selection of the consumer for the offer and was disclosed in the offer. §1681a(l)(3).

Poehl is one of many plaintiffs who have recently filed actions under the statute after receiving unsolicited mailings from companies seeking to lend them money. Courts deciding whether a particular flyer fits the "firm offer of credit" exception have struggled to articulate a consistent definition or test. I have not located any case within the Eighth Circuit deciding this issue, and the parties have cited none. I must therefore look to the law that has developed in other circuits on this issue, as well as to the plain language of the statute. After doing so, I conclude that a firm offer of credit must have some value to a consumer that is more than nominal. Homeowner's offer in this case meets this test.

The "some value" test comes from Cole v. U. S. Capital, Inc., 389 F.3d 719

(7th Cir. 2004). In Cole the court held that an unsolicited mailing offering a $300 credit that could only be used to purchase a vehicle at a particular car dealership did not have any value to the consumer, and therefore was not covered by the FCRA exception.[1] The court rejected the defendant's argument that some offer of guaranteed credit – no matter how small – met the statutory definition, because that would allow anyone to access a consumer's credit report simply by offering, for example, one dollar in guaranteed credit. So, the court reasoned, there must be "sufficient value for the consumer to justify the absence of the statutory protection of his privacy." Id. at 726. Otherwise an offer of credit would be no more than a sham, or the equivalent of an advertisement. " . . . Congress did not intend to allow access to consumer credit information 'for catalogs and sales pitches.'" Id. at 727 (quoting Trans Union, 267 F.3d at 1143). Courts must look to the entire offer and all material conditions of the credit product to make this determination. If the offer was "a guise for solicitation rather than a legitimate credit product" it cannot be a firm offer. Id. at 728. Additionally, the Court noted that terms such as interest rate, methods of computing interest, and length of repayment "may be so onerous as to deprive the offer of any appreciable value." Id.

---

[1]The Cole mailer appeared to offer other things, including a $2000 limit credit card and $19,500 auto financing, but because the flyer also said that approval of those offers was not guaranteed, the Court considered only whether the $300 credit had value.

The Seventh Circuit noted, in Murray v. GMAC Mortgage Corp., 434 F.3d 948, 955-56 (7th Cir. 2006), that the value of an offer is an objective standard, and stated that courts should look to the four corners of the offer to determine whether it has value. More recently, in Perry v. First National Bank, 459 F.3d. 816 (7th Cir. 2006), the court found that an offer of a $250 limit credit card had sufficient value to fit the statutory exception, even though the interest rate was 18.9% and the fees would result in the consumer being billed $175 in the first monthly bill.

Several cases have interpreted Cole strictly, and have held that there can be no firm offer unless all material terms such as amount and interest rate are defined. For example, in Hernandez v. Chase Bank USA, N.A., 429 F. Supp. 2d 983 (N.D. Ill. 2006), the court found no firm offer of credit in a flyer stating that the recipient had been "pre-qualified for up to $100,000 or more" to be secured by the recipient's residence. The court held that the terms of the loan were so vague that they had no value to a consumer. The loan would only be issued depending on information to be provided by the consumer, and the terms could be changed without notice. 429 F. Supp. 2d at 988. In Murray v. E*Trade Financial Corp., 2006 WL 2054381 (N.D. Ill. July 19, 2006), the court interpreted Cole to say that there is no value if the interest rate or repayment provisions are not included. Id. at *3. In Murray v. Finance America, LLC, 2006 WL 862832 (N. D. Ill. April 4,

2006), there was no firm offer where the amount of the loan, the interest rate, and length of time were not specified.

On the other hand, several courts have granted motions for summary judgment or to dismiss, finding that the firm offer of credit exception applied even in the absence of specified interest rates or other terms. In Murray v. HSBC Auto Finance, Inc., 2006 WL 2861954 (N.D. Ill. Sept. 27, 2006), the Court found a firm offer of credit where the flyer said the person had been pre-selected for an auto refinance loan in a minimum amount of $5000. The flyer also stated that the recipient might be able to reduce her rate by as much of 5.04%, and that percentage was based on the average rate reduction obtained by the defendant's customers. The court in Bonner v. Cortrust Bank, N.A., 2006 WL 1980183 (N. D. Ind. July 12, 2006), which was decided before the Seventh Circuit's Perry case, considered a credit card offer similar to that in Perry and concluded that it met the firm offer of credit definition. In Purkowski v. Irwin Home Equity Corp., 423 F. Supp. 2d 1053 (N. D. Cal. 2006), a mailer offering a minimum 20-year, $15,000 line of credit with a maximum interest rate of 24% was a firm offer of credit.

Soroka v. Homeowners Loan Corp., 2006 U.S. Dist. Lexis 38847 (M.D. Fl. June 12, 2006), involved the same defendant as this case, and is directly on point. In Soroka, the offer was for a home loan of $55,000, and the offer stated that the

funds could be used for any purpose. Id. at *9. The offer did not contain the interest rate and payback time. Yet the court still found that the offer had value. Id. It pointed out that "Every consumer and every lender has a common understanding that home loans are made for a definite period of time, that banks charge interest for lending money, and that interest rates are subject to change." Id. The failure to include this information was not fatal because while those terms "were not disclosed on the face of the offer, the material terms were ascertainable with minimal effort." Id.

Many of these courts reasoned that even if a credit offer was not a very good offer – that is, one that a person with good credit would not find to be of much value – it could not be said to have no value, particularly to a person with a bad credit history. For example, in Bonner the court refused to hold that an offer having a value of $75 was not a large enough value to constitute a firm offer. "We must consider the value of the offer only as a means to distinguish between true offers of credit products and mere solicitations." Bonner at * 6. The court noted that while this might not be a very good deal for many people, "for someone having difficulty obtaining credit, it may well be." Id. As long as the offer had some value, it met the statutory definition.

It is not the Court's job to decide whether accepting a particular offer might

be unwise. Rather, I need only look to whether the offer has some value, or more than nominal value, in order to distinguish it from a sales pitch. Congress carefully crafted its definition of "firm offer" and chose not to require that the lender specify particular loan terms. Instead, Congress provided a number of "outs" for a lender, including additional pre-selection criteria, verification, and collateral requirements. If Congress had wanted to require that loan amounts, interest rates, or payback times be specified in a "firm offer," it could have done so. So long as the statutory criteria are met, and so long as there is some value to the consumer so that the offer is not a sham or mere solicitation, then the absence of interest rates and other terms does not prevent the offer from being a "firm offer of credit."

In this case, the offer is for a home loan of $93,500. While the offer states that the actual loan amount "may be more or less," it also states that the $93,500 loan amount is based on an office average of actual loans issued. This average is an indication that the actual value will be more than a nominal amount such as one dollar, as the Cole defendants urged was sufficient. Although the rest of the terms of the loan are not disclosed on the face of the mailer, a reasonable consumer viewing this mailer would believe that it contains some value because it has offered a minimum amount of money, even to persons who might otherwise have

credit problems. This is a real offer even if many of the terms and conditions have not been revealed. I will therefore grant Homeowners' motion to dismiss.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Homeowners Loan Corp's motion to dismiss [#18] is GRANTED and the claims against this defendant only are dismissed.

Catherine D Perry

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 1st day of November, 2006