UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CYNTHIA A. DIXON | : | |
| | : | |
| v. | : | C.A. No. 06-442T |
| | : | |
| CALUSA INVESTMENTS, LLC, | : | |
| d/b/a NEXT DAY LOAN | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is presently before the Court on the Motion to Dismiss (Document No. 6) filed by Defendant Calusa Investments, LLC d/b/a Next Day Loan ("Calusa"). Calusa seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that Plaintiff Cynthia Dixon's ("Dixon") Complaint fails to present a cognizable claim under the Fair Credit Reporting Act ("FCRA"). Dixon filed an Objection to Calusa's Motion to Dismiss. (Document No. 12).

Calusa's Motion to Dismiss has been referred to me for preliminary review, findings and recommended disposition. See 28 U.S.C. § 636(b)(1)(B); LR Cv 72. A hearing was held on February 8, 2007. After listening to the arguments, reviewing the Motion, the Objection and the relevant legal authority, this Court recommends that Calusa's Motion to Dismiss (Document No. 6) be GRANTED.

**Background**

In this proposed class action, Dixon seeks damages for herself and on behalf of a class of residents from Rhode Island, Massachusetts and New Hampshire for alleged violations of the FCRA, 15 U.S.C. §§ 1681, et. seq. (Compl. ¶ 1.) The putative class is composed of those residents that

received flyers from Calusa extending an offer of credit. (Id. ¶ 4.) Excluded from the class are individuals that responded to the flyers and received credit from Calusa. (Id.)

In August and September 2006, Dixon received three flyers from Calusa through the U.S. mail. (See Compl. ¶ 10; Exs. A-C.) Each of the flyers Dixon received states that it is a "prescreened offer of credit" which is "based on information in your credit report...." (Compl. ¶ 11; Exs. A-C.) The top of each document contains a sample check which is "To the Order of" Dixon in the sum of two hundred sixty-five thousand six hundred twenty-five dollars ($256, 625.00). (Exs. A-C.) The bottom of each check states, "Non-negotiable. This is not a check." (Id.) Additionally, each check contains a reservation number. (Id.)

Two of the three offers appear identical, while the third contains a slightly different layout and different wording, but the same basic offer of credit. Two of the flyers state, "One simple phone call and you're on your way to *Financial Freedom!* Use the money to totally erase your high interest debts...[Y]ou could get $5,000, $10,000, even $20,000 or more in cash for home improvements, to buy a car or to use for any purpose." (See Exs. A and C.) The third flyer states, "[w]ith a Next Day Loan, you could pay off your high-interest credit cards, make one lower monthly payment and take cash out to spend however you wish." (Ex. B.) All three flyers state that Dixon has been "pre-selected" and that she should "call today and simply ask for [her] funds." (Exs. A-C.)

Further, the flyers contain a text box that compares "Your Current Monthly Payments" to "Your New Lower Monthly Payment" and "Your Payment Savings." There are several debts listed under the "Your Monthly Payments" section, which include hypothetical payments on a mortgage, Visa, Mastercard, Discover Card, Department Store credit card and Personal Loan. (Exs. A-C.)

A footnote to the box states, "[t]he example is based on the following: A new Calusa arm loan of $265,625 with a rate of 7.99%, and a term of 360 months (30 years) and an Annual Percentage Rate ("APR") of 10.546%. Your rate may vary according to your credit history and other factors." (Id.)

The second page of each of the documents contains a prominent "Prescreen & Opt Out Notice" as well as the "Offer Terms and Conditions." (Id.) The Offer Terms and Conditions states,

> You received this offer because you satisfied our initial criteria for creditworthiness. This offer is contingent on our receiving a valid first or second lien on an owner-occupied one to two family residence...with a value that is within our minimum and maximum property value requirements. An appraisal of your residence may be required. This offer is subject to minimum and maximum loan amounts. Approval is subject to verification of employment and acceptable income, credit history and collateral. This offer may not be extended if, after responding to this offer, it is determined that you no longer meet the criteria used to select you for this offer or other specific criteria bearing on your creditworthiness in effect at the time of mailing.

(Exs. A-C.)

Dixon did not authorize Calusa's access to, or use of, her credit report, and did not initiate the transaction with Calusa. (Compl. ¶¶ 22, 24.) After receiving the flyers, Dixon never contacted Calusa and did not attempt to secure credit based on the information it provided to her. Dixon alleges that Calusa did not have a permissible purpose under the FCRA for obtaining and using her credit report. (Id. ¶¶ 27, 30.) Specifically, Dixon alleges that the documents she received from Calusa did not qualify as a firm offer of credit, but instead were a "sham, excessively vague and totally lacking in terms." (Id. ¶ 31.) Dixon claims that by accessing and using her credit report without a permissible purpose, Calusa willfully violated the FCRA. (Id. ¶ 33.) Dixon seeks statutory damages as well as injunctive relief, attorneys' fees and costs of suit. In its Motion to

Dismiss, Calusa claims that the flyers sent to Dixon are "firm offers of credit" as that term is defined under the FCRA. Calusa also claims that Dixon has not plead sufficient facts to support a claim for a willful violation of the FCRA.

**Standard of Review**

In ruling on a motion to dismiss pursuant to Rule 12(b), the Court construes the complaint in the light most favorable to the plaintiff, see Greater Providence MRI Ltd. P'ship v. Med. Imaging Network of S. New England, Inc., 32 F. Supp. 2d 491, 493 (D.R.I. 1998); Paradis v. Aetna Cas. & Sur. Co., 796 F. Supp. 59, 61 (D.R.I. 1992), taking all well-pleaded allegations as true and giving the plaintiff the benefit of all reasonable inferences, see Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002); Carreiro v. Rhodes Gill and Co., 68 F.3d 1443, 1446 (1st Cir. 1995); Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir. 1994). If under any theory the allegations are sufficient to state a cause of action in accordance with the law, the motion to dismiss must be denied. See Hart v. Mazur, 903 F. Supp. 277, 279 (D.R.I. 1995). The Court "should not grant the motion unless it appears to a certainty that the plaintiff would be unable to recover under any set of facts." Roma Constr. Co. v. aRusso, 96 F.3d 566, 569 (1st Cir. 1996); accord Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Arruda, 310 F.3d at 18 ("[W]e will affirm a Rule 12(b)(6) dismissal only if 'the factual averments do not justify recovery on some theory adumbrated in the complaint.'"). Exhibits to a complaint are considered part of the pleading for purposes of a motion to dismiss. See Fed. R. Civ. P. 10(c); Blackstone Realty LLC v. Fed. Deposit Ins. Corp., 244 F.3d 193, 195 (1st Cir. 2001) (written offer attached to complaint is part of the pleading for purposes of a motion under Fed. R. Civ. P. 12(b)(6)).

## Discussion

**1. Statutory Backdrop**

The FCRA was enacted to "preserve the consumer's privacy in the information maintained by consumer reporting agencies." See Cole v. U.S. Capital, Inc., 389 F.3d 719, 725 (7th Cir. 2004). Accordingly, consumer reporting agencies are prohibited from releasing information contained in a consumer's credit report "unless the release occurs for one of the permissible purposes set forth in 15 U.S.C. § 1681b(a)." (Id.) Typically, a release occurs upon consumer authorization, however, there are other permissible purposes that do not require prior consumer consent. One permissible purpose for obtaining a consumer report without prior consent is to extend a firm offer of credit. See §1681b(c)(1)(B)(I). "This provision enables a credit provider...to provide certain criteria to a credit agency and then to receive – without the consumers' consent – basic contact information about consumers who met those criteria." Poehl v. Countrywide Home Loans, Inc., No. 4:06CV928 CDP, 2006 WL 3628982, *2 (E.D. Mo. Nov. 1, 2006). The information received by a lender includes (1) the name and address of the consumer; (2) an identifier that may be used solely to verify the consumer's identity; and (3) "other information pertaining to a consumer that does not identify the relationship or experience of the consumer with respect to a particular creditor or other entity." 15 U.S.C. § 1681b(c)(2).

The FCRA defines a "firm offer of credit" as "...any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer..." 15 U.S.C. §1681. Moreover, the FCRA states that, "...the offer may be further conditioned" in three ways. First, the creditor may consider additional, pre-selected factors as to the consumer's credit

worthiness. See 15 U.S.C. §1681a(*l*)(1). Second, the offer may be contingent upon verification that the consumer continues to meet specific criteria used to select the consumer for the offer. See 15 U.S.C. §1681a(*l*)(2). Finally, the offer can be conditioned upon the consumer furnishing adequate collateral. See 15 U.S.C. §1681a(*l*)(3).

The parties dispute the meaning of a "firm offer of credit" in the context of several recently published decisions. Dixon relies heavily upon Cole v. U.S. Capital, Inc., 389 F.3d 719 (7th Cir. 2004), to argue that a "firm offer of credit" must include all material terms and be of value to the consumer. Dixon also points to basic contract law on the meaning of an offer, as well as Federal Reserve Board Guidelines, which outline information a consumer can use to evaluate mortgage financing.[1] Calusa, on the other hand, contends that the flyers it distributed comply with the plain language of the FCRA, and that the requirements set forth in Cole are not binding upon this Court because Cole is distinguishable. Calusa also relies upon recent decisions by several other courts interpreting the FCRA in its favor under similar facts.

With the deferential standard of review as a guide, this Court considers the legal question of whether the flyers sent to Dixon by Calusa constitute a firm offer of credit as defined in the FCRA. The First Circuit has not yet addressed this question. Therefore, in addition to looking at the allegations plead in the Complaint and the plain language of the FCRA, this Court looks to other Circuits to consider the law which has developed on this issue.

[1] Notably, Dixon has not taken the position that Calusa's Rule 12(b)(6) Motion is premature or otherwise inappropriate. Instead, Dixon focuses on the legal issue as to whether the flyers contained a firm offer of credit. Accordingly, the Court disposes of the case after considering the facts alleged and their application to existing law.

**2. Cole v. U.S. Capital, Inc., 389 F.3d 719 (7th Cir. 2004)**

In starting its analysis, the Court considers the case primarily relied upon by Dixon in her Complaint and her Memorandum in Opposition, i.e., Cole v. U.S. Capital, Inc., 389 F.3d 719 (7th Cir. 2004). In her Complaint, Dixon states that the flyers she received from Calusa do not "qualify as a 'firm offer of credit' within the meaning of the FCRA" and that the "purported offer (if one exists at all) is a sham, excessively vague and totally lacking in terms. It has no value beyond a solicitation for business...." (See Compl. ¶ 31.) In Cole, the Seventh Circuit Court of Appeals held that the District Court erred in dismissing an FCRA complaint brought by a recipient of a credit flyer. See Cole, 389 F.3d at 723-725. The Plaintiff in Cole received a document which stated that she was "preapproved to participate in an exclusive offer from U.S. Capital and Jerry Gleason Chevrolet." (Id. at 722). The offer stated that she could receive a "Visa or MasterCard with limits up to $2000 as well as up to $19,500 in AUTOMOTIVE CREDIT!" (Id.) The offer went on to note that she met the "initial criteria for inclusion in this special credit offer," but it further listed several requirements and noted that "[i]n any event, you are guaranteed to receive a credit line of at least three hundred dollars for the purchase of a vehicle...." (Id.) Finally, the flyer noted that "guaranteed approval is neither expressed nor implied, interest rates may vary from 2.9% to 24.9 %...." (Id.)

The District Court held that the offer qualified as a firm offer of credit under the FCRA, but the Seventh Circuit disagreed. The Court of Appeals stated that "[a] 'firm offer' must have sufficient value for the consumer to justify the absence of the statutory protection of his privacy." Cole, 389 F.3d at 726. The Court found that the guaranteed offer of $300.00 was too minimal, noting that "[a]n offer of credit without value is the equivalent of an advertisement or solicitation." (Id. at 727.)

The Seventh Circuit was also concerned with the lack of disclosure of the terms and conditions attached to the offer. It noted that, "[a] court must consider the *entire* offer and the effect of *all* the material conditions that comprise the credit product in question. If, after examining the entire context, the court determines that the 'offer' was a guise for solicitation rather than a legitimate credit product, the communication cannot be considered a firm offer of credit." (Id. at 728.) (emphasis in original). In considering the entire offer, the Seventh Circuit noted that a consumer cannot consider the "amount of credit in a vacuum...[but] must know the other terms attached to that credit to determine whether it is advantageous to extend or to accept the offer." (Id. at 728.) The items deemed essential included, "the rate of interest charged, the method of computing interest and the length of the repayment period...." (Id.)

Relying on Cole and its progeny, Dixon argues that the document she received did not contain a firm offer. First, Dixon notes that the "faux check" in the amount of $256,625.00 is only a hypothetical amount and was not a specific offer. (Pl.'s Mem. at 6.) Next, Dixon contends that the interest rate of 7.99% is merely an example, which is "virtually meaningless." (Id.) Additionally, the "amount of fees and charges are unknown, and totally undescribed...." (Id.) Dixon contends that because of these uncertainties, the document Dixon received was merely an "advertisement or solicitation." (Id. at 10.) Finally, at the argument on the Motion, Dixon raised a new issue, contending that the purported offer fails because it does not contain specific language indicating that Dixon is "pre-approved" for a specific loan amount.

**3. Whether the Offer Has Value**

In the wake of Cole, there has been a significant increase in reported decisions considering what constitutes a firm offer of credit. Courts considering whether these plaintiffs have received a

firm offer of credit have looked to the discussion contained in Cole, and while some Courts have followed the guidelines set forth by the Seventh Circuit in Cole, several other Courts have reasoned that the facts set forth in their particular case, and the language of the FCRA, dictate a different outcome. Upon examination of the entire offer contained in the Calusa flyer as well as the language of the FCRA, the Court finds that Cole is factually distinct and that Calusa's offer was a "firm offer of credit" as that phrase is defined in the FCRA.

While this Court declines to follow Cole, its guideposts are useful in analyzing whether the flyer contains a firm offer of credit. Under Cole, the primary consideration made by the Court is whether the offer made to Dixon had value. As noted, the Cole Court held that an offer of $300.00 towards the purchase of an automobile did not have value and therefore was a sham or an advertisement. Cole, 389 F.3d at 727. A more recent case from the Seventh Circuit summarized the "value" question, noting "[a]n offer has value to 'the consumer' if it is useful to the *normal* consumer. Cole's objective was to separate *bona fide* offers of credit from advertisements for products and services, determining from '*all* the material conditions that comprise the credit product in question ··· [whether it] was a guise for solicitation rather than a legitimate credit product.'" Murray v. GMAC Mortgage Corp., 434 F.3d 948, 955 -956 (7th Cir. 2006) citing Cole, 389 F.3d at 728. (emphasis in original). In Soroka v. Homeowners Loan Corp., No. 05CV2029, 2006 U.S. Dist. Lexis 38847 (M.D. Fla. June 12, 2006), the District Court also focused on whether the entire offer was a "guise for solicitation rather than a legitimate credit product." (Id. at *10.) The Court in Soroka concluded that an offer for a home loan of $55,000 which could be used for "any purpose" was a firm offer even though the interest rates and terms were omitted from the four corners of the offer, since these "material terms were ascertainable with minimal effort." (Id.)

The District Court for the Eastern District of Missouri also considered this issue and applied a "some value" test. See Poehl, 2006 WL 3628982 at *2. In other words, if the offer had some value to a consumer, it could qualify as a firm offer of credit, as long as other statutory conditions were satisfied. The Court explained, "even if a credit offer was not a very good offer – that is, one that a person with good credit would not find to be of much value – it could not be said to have no value, particularly to a person with a bad credit history." (Id. at *4.)

Applying the reasoning set forth in several of these cases, the flyer sent to Dixon satisfies the initial "value" consideration. The offer Dixon received was for a mortgage loan of $256,625.00. In this Court's view, a mortgage loan in this amount would certainly have some value to the normal consumer. Moreover, unlike the offer in Cole of $300.00 towards the financing of a motor vehicle, Calusa's offer states that it can be used for "any purpose." Therefore, on its face, the Calusa flyer cannot be considered a mere advertisement as was the solicitation at issue in Cole.

**4. Inclusion of Interest Rates and Terms**

Having determined that an offer for a $256,625.00 mortgage loan would have value to a normal consumer, the Court next considers whether there are any other aspects of the Calusa flyer that negate a finding of a firm offer of credit. The primary consideration is the disclosure of the rates and terms attached to the offer – an inquiry which is closely tied to whether the offer has value. While the Cole Court concluded that a consumer must know the specific interest rates and terms attached to the offer in order to determine if the offer was of value, other Courts have stated that the terms and rates need not be disclosed in order to determine if an offer is of value. Again, this Court chooses not to follow Cole on this issue.

In this case, the flyer sent to Dixon contains an offer of $256,625.00 and lists how Dixon could eliminate her consumer debt and reduce her monthly payment based on a hypothetical debt consolidation. The loan used to demonstrate how Dixon could reduce her debt had a rate of 7.99%, a term of 360 months and an APR of 10.546%. The flyer states that Dixon's actual interest rate and terms "may vary according to your credit history and other factors." (Exs. A-C.) Dixon claims the terms set forth were merely an example. Calusa counters that while the amounts used in the debt consolidation example were hypothetical, the loan terms listed were not hypothetical, but were the terms applicable to the offer made to Dixon.

Because the Court must accept the allegations in the Complaint as true, the Court credits Dixon's statement that the flyer she received contained only an example interest rate and other terms. Even accepting this characterization, the flyer can still be deemed a firm offer of credit. The Soroka Court noted that "the omission of the interest rate and term from the face of the offer does not mean that the offer is without value; it only means that more information must be provided before a consumer can evaluate with certainty how much value the offer has." 2006 U.S. Dist. Lexis 38847 at *9. The Court went on to note that, "[e]very consumer and every lender has a common understanding that home loans are made for a definite period of time, that banks charge interest rates for lending money, and that interest rates are subject to change." (Id. at *10.) This Court accepts the reasoning used in Soroka and finds that even if the terms and rates listed at the bottom of the offer were only examples, a consumer would understand that interest rates for a mortgage loan cannot be guaranteed in a flyer containing a firm offer of credit, especially in light of the fact that lenders extending a firm offer of credit are only supplied with limited information on a consumer and, by statute, may impose additional conditions before an offer must become final.

More importantly, the Court notes that the FCRA itself does not contain a requirement that the interest rates and other terms be set forth in the offer. See, e.g., Poehl, 2006 WL 3628982 at *2 ( "Congress...did not specify what, if any, credit terms had to be included for something to be a 'firm offer.' The statute does not say that the loan amount, interest rate, or a payback period be stated."). The Poehl Court found that, "[s]o long as the statutory criteria are met, and so long as there is some value to the consumer so that the offer is not a sham or mere solicitation, then the absence of interest rates and other terms does not prevent the offer from being a "firm offer of credit.'" (Id. at *4.) The District Court for the Northern District of California also rejected Cole's requirement that the terms and rates must be locked in at the time of the offer. Putkowski v. Irwin Home Equity Corp., 423 F.Supp. 2d 1053, 1060 (N.D. Cal. 2006). "The text of the FCRA does not support plaintiffs' suggestion that a firm offer of credit cannot contain a range of credit or interest rates, or that it must be of sufficient 'value' when judged by a later arbiter, as suggested by the Seventh Circuit in Cole. There is also nothing in the FCRA that would prohibit a potential lender from indicating that a responding recipient may later obtain more favorable terms than the minimum terms presented in the mailer." (Id.)

As the Court in Soroka noted, a firm offer is "...an offer made in the present, based on information known by the offeror, subject to later verification." 2006 U.S. Dist. Lexis 38847 at *14. A recent Seventh Circuit opinion considered a claim that an offer for a mortgage loan was not a firm offer of credit. In its discussion of the terms and rates disclosed in the disputed flyer, the Seventh Circuit stated, "...we do not read Cole or Perry to require disclosure of every single loan term for an offer to be considered firm. Such a requirement poses particular difficulty in the case of a mortgage, because, unlike a credit card, a mortgage is tailored to the individual consumer depending on such

factors as how much he or she wishes to borrow, his or her current income, and the value of the property offered as collateral; all of this information would have to be provided by the individual borrower." Cavin v. Home Loan Ctr. Inc., No. 05C4987, 2007 WL 92509, *7 (N.D. Ill. Jan. 10, 2007). Cavin is well-reasoned and supports a finding that Calusa made a firm offer of credit to Dixon. On the basis of Cavin, as well as the language contained in the FCRA and myriad of other cases supporting Calusa's position, the Court finds that Calusa's flyer contained a firm offer of credit because it would be of value to the normal consumer and because the lack of clarity concerning the interest rates and loan terms is commonplace in the lending industry until the formal application process has commenced.

The final issue is Dixon's claim that the flyer did not contain a firm offer of credit because it did not contain language that specifically states that Dixon was "pre-approved" for a sum certain. At the argument, counsel for Dixon stated, "[t]here is nothing in this document that says to Mrs. Dixon – 'you have been preapproved' – or some phrase of cliche to that effect – for a loan of X." Later, counsel for Dixon noted that "at best, you might have an amount of the loan [but] it does not tell Mrs. Dixon you have been pre-approved for a loan of $265,625.00" Counsel argued that to be a firm offer, the flyer must "convey some type of offer" and that the flyer Dixon received "doesn't come close to suggesting she has been preapproved." Plaintiff's argument is belied by the plain language of each of the three flyers. Each of the flyers states, for example, that Dixon has been "pre-selected" for the offer, and states that she should "call today and simply ask for [her] funds." (Exs. A-C.) Moreover, the sample checks for the "sum of" $265,625.00 are made payable to "the order of" Dixon and contain a "reservation number." (Id.) In light of the substantial amount of the offered loan, the fact that a sample of a check was used is reasonable, and it is plain that Calusa's

"pre-selected" offer was for the amount made payable to Dixon in the "faux check." Therefore, Dixon's argument that the flyers do not indicate that she has been "preapproved" is contradicted by the plain language in the flyers. Moreover, reading the flyers in their entirety, it is clear that the amount of the proposed loan is $265,625.00. Accordingly, the latest argument raised by Dixon, that the offer fails for lack of notice that she was "preapproved," is rejected.

Construing all of the allegations in the Complaint in Dixon's favor, her Complaint fails to state a claim under the FCRA upon which relief can be granted, and I therefore recommend that Dixon's Complaint be dismissed. Because the Court has concluded that Dixon's Complaint does not state a claim for violation of the FCRA, there is no need for a discussion of the willfulness argument.

**Conclusion**

For the reasons discussed above, I recommend that Calusa's Motion to Dismiss (Document No. 6) be GRANTED and that the District Court enter final judgment in Calusa's favor on all claims in Dixon's Complaint. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
February 20, 2007