# Exhibit A

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
George Julian **SOROKA,** Plaintiff,
v.
JP MORGAN CHASE & CO., JP Morgan Chase Bank, N.A., and JP Morgan Chase Manhattan Bank U.S.A., N.A., Defendants.
**No. 05 Civ. 7578(DAB).**

March 19, 2007.

*MEMORANDUM & ORDER*

BATTS, J.

***1** Plaintiff George Julian Soroka brings this putative class action suit against JP Morgan Chase & Co., JP Morgan Chase Bank, N.A., and JP Morgan Chase Manhattan Bank U.S.A., N.A. [FN1] (collectively "Defendants"), alleging willful violations of 15 U.S.C. § 1681 *et seq.*, the Fair Credit Reporting Act (FCRA). Plaintiff alleges that Defendants had a willful "corporate policy and business practice of obtaining and using consumer [credit] reports in connection with soliciting individuals to enter credit transactions not initiated by the individuals and failing to undertake to extend to the individuals firm offers of credit." (Complaint ¶ 44.) Plaintiff also alleges that Defendants' written solicitations lacked the "clear and conspicuous" disclosures that are required by the FCRA. (*Id.* ¶ 50.) Plaintiff seeks class action certification under Fed.R.Civ.P. 23, designation of himself as class representative, statutory and punitive damages, attorney's fees, a declaration that Defendants' actions violate the FCRA and an injunction against Defendants' alleged willful violations of the FCRA.

> FN1. Defendants point out that "[t]here is no entity named JP Morgan Chase Manhattan Bank, U.S.A., N.A." and that Plaintiff's Complaint appears "intended to refer to Chase Manhattan Bank USA, N .A." which was renamed Chase Bank USA, N.A. on March 1, 2005. (Defs.' Mot. Dismiss at 1, n. 1.)

Defendants have moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, Defendants' motion is GRANTED.

## I. BACKGROUND

### A. The Fair Credit Reporting Act

In recognition of the importance of credit reporting to the nation's banking system and its effect on consumers' personal finances, [FN2] Congress enacted the FCRA to "require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer." 15 U.S.C. § 1681(b). In the interest of protecting consumers' privacy, the FCRA allows creditors to access a consumer's credit report when the consumer has not initiated a transaction with that creditor only under narrowly defined circumstances. 15 U.S.C. § 1681b(c)(1). For instance, the FCRA authorizes a creditor to access a consumer's credit report "in connection with any credit or insurance transaction," but only where "the transaction consists of a firm offer of credit or insurance." 15 U.S.C. § 1681b(c)(1)(B)(i).

> FN2. Congress made the following findings in enacting the FCRA:
> (1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.
> (2) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.
> (3) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

> (4) There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy. 15 U.S.C. § 1681(a).

As an added measure of consumer protection, the FCRA provides that if a creditor does access a consumer's consumer credit report for use in a firm offer of credit, where the consumer has not initiated the transaction, the creditor must make certain disclosures in extending the firm offer. 15 U.S.C. § 1681m(d). Under such circumstances a creditor is required to disclose that the consumer's credit report had been used in extending the offer, that the creditor believes the consumer satisfies the creditor's criteria for creditworthiness, that acceptance of the offer may be subject to certain additional conditions and that the consumer may opt out from receiving any such offers from the creditor in the future. 15 U.S.C. § 1681m(d)(1)(A)-(E). These disclosures must be made in a "clear and conspicuous" statement. [FN3] 15 U.S.C. § 1681m(d)(1).

> FN3. The FCRA does not explain what constitutes a clear and conspicuous statement.

***2** In any event the FCRA provides consumers the option of blocking unsolicited offers of credit or insurance by notifying credit reporting agencies that "the consumer does not consent to any use of a consumer report relating to the consumer in connection with any credit or insurance transaction that is not initiated by the consumer." 15 U.S.C. § 1681b(e)(1).

B. Defendants' "Firm Offer" of Credit to Plaintiff

According to the Complaint, "at least as early as February 25, 2005" Defendants accessed Plaintiff's consumer credit report "without his consent or knowledge." (Complaint ¶ 23.) Defendants then sent Plaintiff a letter which offered him a home-loan from Chase Bank USA, N.A. ("Chase"). (*Id.* ¶ 26.) The letter invited Plaintiff to "[u]se *our* money to pay off *your* bills!" (Defs.' Mot. Dismiss at Ex. A.) It further stated that "with Chase, you can turn the equity you have in your home into cash you can use" and informed Plaintiff that "[y]ou're pre-qualified* for up to $100,000 or more." *Id.*

The asterisk that followed "pre-qualified" led to a footnote that stated "Please see reverse side for details". *Id.* The reverse side of the letter contained the following bolded, 8-point text: " *Important Program Information". *Id.* Beneath this heading appeared a vertical column of text, occupying roughly a third of the letter, in both bold and regular type. This text explained that "information from a credit bureau was used in connection with this offer[,]" that Chase believes "you satisfy Chase's criteria for creditworthiness[,]" that "[y]ou may request that your name be excluded from any future lists prepared by the credit bureau for future unsolicited credit offers[,]" that "your residence is the collateral for this loan[,]" and that the offer might be withdrawn should information arise in "your application" or from other sources that shows that "you do not meet all of our loan program requirements." *Id.*

Plaintiff claims that Defendants' letter purporting to extend a firm offer of credit violated the FCRA in two ways. First, Plaintiff argues that the letter could not be regarded as a "firm offer" within the meaning of the FCRA and therefore the fact that Defendants accessed his credit reports in order to send the letter was a violation of the FCRA. Second, Plaintiff alleges that Defendants' letter failed to make the disclosures required by the FCRA appear "clear and conspicuous" as the statute requires.

II. DISCUSSION

Defendants have moved to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6) on the grounds that Plaintiff has failed to state a claim upon which relief can be granted.

A. Legal Standard for Motion to Dismiss

On a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) the Court "must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Bolt Elec. v. City of New York,* 53 F.3d 465, 469 (2d Cir.1995) (citations omitted). "The district court should grant such a motion only if, after viewing the plaintiff's allegations in this favorable light, it appears beyond

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir.1999). A court does not, however, have to accept as true "conclusions of law or unwarranted deductions of fact[.]" *First National Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir.1994), cert. denied, 513 U.S. 1079 (1995).

B. A "Firm Offer" under the FCRA

***3** Having accessed Plaintiff's consumer credit report, without his initiation of a transaction with Defendants, Defendants are obligated to extend Plaintiff a "firm offer" of credit, as that term is defined in the FCRA. 15 U.S.C. §§ 1681b(c)(1)(B)(i) and 1681a(*l* )(1)-(3). Plaintiff claims, however, that Defendant did not make him a firm offer of credit. Plaintiff alleges that the offer contained in Defendant's letter "is so devoid of meaningful terms that neither the lender nor [Plaintiff] can determine whether it is advantageous to extend or accept the 'offer'." (Complaint ¶ 27.) Plaintiff alleges that the loan offered by Defendants is contingent of the consumer's fulfillment of various conditions and that the offer provides no details regarding important terms such as the interest rate that would be charged or the length of the repayment period. (*Id.* ¶ 26.)

To determine whether the offer of credit contained in Defendants' letter constituted a firm offer within the meaning of the FCRA, the Court looks to the plain meaning of the relevant language in the FCRA:

> [I]n interpreting a statute a court should always turn to one cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.

*Connecticut National Bank v. Germain*, 503 U.S. 249, 112 S.Ct. 1146, 1149 (1992) (internal quotations and citations omitted); *see also Boatswain v. Gonzales*, 414 F.3d 413, 417 (2d Cir.2005).

As discussed above, the FCRA unambiguously allows a creditor to access a consumer's credit report when the consumer has not initiated the transaction, but only in certain limited circumstances. Moreover, when a creditor so accesses a consumer's credit report, a firm offer of credit must be made if the consumer meets the creditor's criteria for creditworthiness. 15 U.S.C. §§ 1681b(c)(1)(B)(i) and 1681a(*l* )(1)-(3).

The FCRA specifically defines the term "firm offer" to mean:

> any offer of credit ... to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for that offer.

15 U.S.C. § 1681a(*l* ). However, a firm offer under the FCRA may also include certain conditions which the consumer must meet in order to accept effectively the offer of credit. 15 U.S.C. § 1681a(*l* )(1)-(3). Firm offers of credit or insurance under the FCRA may be conditioned "on one or more" of the following:

> (1) The consumer being determined, based on information in the consumer's application for the credit or insurance, to meet specific criteria bearing on credit worthiness or insurability, as applicable, that are established--
>
> (A) before selection of the consumer for the offer; and
>
> ***4** (B) for the purpose of determining whether to extend credit or insurance pursuant to the offer.
>
> (2) Verification
>
> (A) that the consumer continues to meet the specific criteria used to select the consumer for the offer, by using information in a consumer report on the consumer, information in the consumer's application for the credit or insurance, or other information bearing on the credit worthiness or insurability of the consumer; or
>
> (B) of the information in the consumer's application for the credit or insurance, to determine that the consumer meets the specific criteria bearing on credit worthiness or insurability.
>
> (3) The consumer furnishing any collateral that is a requirement for the extension of the credit or insurance that was--
>
> (A) established before selection of the consumer for the offer of credit or insurance; and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(B) disclosed to the consumer in the offer of credit or insurance.

15 U.S.C. § 1681a(*l*)(1)-(3). Thus, a firm offer under the FCRA differs from what might be considered a firm offer in other business contexts or at common law in that such an offer may be conditioned on the consumer's meeting certain requirements after the offer is made. The United States Court of Appeals for the Fifth Circuit has observed that:

> [The FCRA] permits a creditor to make a "conditional" firm offer of credit; that is, an offer that is conditioned on the consumer meeting the creditor's previously-established criteria for extending credit.... [A] firm offer of credit under the Act really means *a firm offer if you meet certain criteria.*

*Kennedy v. Chase Manhattan Bank USA, NA,* 369 F.3d 833, 841 (5th Cir.2004) (internal quotations omitted) (emphasis added).

The Court finds that the letter sent by Defendants to Plaintiff clearly did constitute a firm offer within the meaning of the FCRA. Moreover, the conditions attached to Defendants' firm offer were among those explicitly permitted by the FCRA. As for Plaintiff's complaint that the offer lacked terms such as the applicable interest rate and repayment period, the FCRA simply does not require that such terms be included in firm offers of credit made pursuant to the statute. *See* 15 U.S.C. § 1681m(d) (listing disclosures that must accompany firm offers of credit or insurance under the statute). Further, the disclosure of such terms is governed by other statutes within the Consumer Credit Protection Act, [FN4] specifically the Truth in Lending Act ("TILA"). The TILA requires these disclosures at a point in the the credit transaction subsequent to a FCRA firm offer, that is, at the time that the consumer is provided with an application or before the transaction is completed. *See* 12 C.F.R. §§ 226.5b(b) and 226.17(b). Because disclosures of additional terms regarding the applicable interest rate and repayment period for credit products are governed by the TILA and because the FCRA does not explicitly require such terms to be disclosed as part of a firm offer of credit, the Court finds that it is not a violation of the FCRA for a creditor to fail to include such terms in firm offers of credit.

> FN4. TILA and FCRA both form parts of the Consumer Credit Protection Act, codified as Chapter 41 of Title 15 of the United States Code, subchapters I and III respectively.

*5 The principal case that Plaintiff relies upon in support of his contention that Defendants' letter offering credit violated the FCRA is *Cole v. U.S. Capital, Inc.,* 389 F.3d 719 (7th Cir.2004). In *Cole,* the Court examined the specific terms of a loan, including the interest rate, to determine whether it constituted a firm offer under the FCRA. That case, however, involved a car dealership that had sent out advertisements offering "automotive credit" that the consumer could apply to the purchase of a new car. *Id.* at 723. The Court found that the offer of automotive credit contained ambiguous and contradictory language, offered a minimum loan of only $300 towards purchase of cars that cost many thousands of dollars and contained several other vague terms. *Id.*

The Court sought to determine whether the purported offer of automotive credit had any "value to the consumer" and therefore whether it was a firm offer under the FCRA or whether it was merely a "guise for solicitation." *Id.* The Court considered whether the offer was likely be honored and found that "the language of the flyer itself creates a question whether the offer of credit will be honored." *Id.* The Court also scrutinized the minimum amount of the loan which it deemed to be an "important term for courts to evaluate." *Id.* The Court concluded that the purported offer of automotive credit was a sham which did not offer a credit product of any value to the consumer and which was intended only "to justify access to the consumer credit reports" for the purpose of selling cars and therefore was a violation of the FCRA. *Id.* at 728.

Here, there is no reason to suppose that Defendants are not extending a valuable offer of credit to Plaintiff. Assuming that the consumer could meet the lender's conditions, which the lender is explicitly permitted to apply under the FCRA, the offer is clearly for a minimum loan of "$15,000 (or $10,000 in MI)." (Defs.' Mot. Dismiss at Ex. A.) This is hardly the "nominal" $300 credit line offered by the defendants in *Cole,* 389 F.3d 719 at 726. Moreover, Plaintiff has

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

not alleged that Defendants' offer of credit would not be honored. Defendants claim that they extend to consumers over $1 billion in loans annually pursuant to solicitations such as the one mailed to Plaintiff. (Defs.' Mot. Dismiss at 10). Plaintiff does not dispute this claim. Additionally, Defendants were not attempting to sell Plaintiff any other products in conjunction with the offer of credit, as were the defendants in *Cole.* Thus, even if Defendants' letter offering credit to Plaintiff were to be subjected to the analysis applied by the Court in *Cole,* Defendants' offer could not be found to have been a sham. As such, Defendants' firm offer of credit cannot be deemed to have been made in violation of the FCRA.

Accordingly, the Defendants' Motion to Dismiss Plaintiff's First Cause of Action is GRANTED.

C. Clear and Conspicuous Disclosures

***6** Plaintiff seeks relief for an alleged violation of 15 U.S.C. § 1681m(d) contending that Defendants failed to provide disclosures in a "clear and conspicuous manner". The FCRA, however, explicitly provides that there is no private right of action for such alleged violations of section 1681m(d) (requiring disclosures to be "clear and conspicuous"):

> (A) No Civil Actions.
>
> Sections 1681n and 1681o [which provide private rights of action for willful and negligent violations of other FCRA provisions] shall not apply to any failure by any person to comply with this section.
>
> (B) Administrative enforcement.
>
> This section shall be enforced exclusively under section 1681s of this title by the Federal agencies and officials identified in that section.

15 U.S.C. 1681m(h)(8). The unambiguous plain language of the FCRA makes it clear that Congress intended for this section to be enforced only by Federal administrative agencies. *See Shellman v. Country Wide Home Loans, Inc.,* 2006 WL 154427 (N.D.Ind.2006); *Murray v. Cross Country Bank,* 399 F.Supp.2d 843 (N.D.Ind.2005); *Bonner v. Home123 Corp.,* 2006 WL 1518974 (N.D.Ind.2006); *Shellman v. Country Wide Home Loans, Inc.,* 2006 WL 1544427 (N.D.Ind.2006); *Bruce v. Grieger's Motor Sales, Inc.,* 422 F.Supp.2d 988 (N.D.Ind.2006); *Putkowski v. Irwin Home Equity Corp.,* 423 F.Supp.2d 1053 (N.D. Cal 2006); *Stavroff v. Gurley Leep Dodge, Inc.,* 413 F.Supp.2d 962 (N.D.Ind.2006); *Harris v. Fletcher Chrysler Prods., Inc.,* 2006 WL 279030 (S.D.Ind.2006); *Villagran v. Freeway Ford, Ltd.,* 2006 WL 964731 (S.D. Tex 2006).

A private right of action under section 1681m(d) was eliminated by changes to the FCRA that took effect on December 1, 2004. Plaintiff argues that the actions that constituted the alleged violation of section 1681m(d) occurred at the time that Defendants prepared their mail solicitation. Plaintiff suggests that this may have happened prior to December 1, 2004. The Complaint does not, however, contain any allegations to that effect. Indeed, Plaintiff does not specifically allege that Defendants accessed his consumer credit report anytime before "February 25, 2005." (Complaint ¶ 23.) Accordingly, because 15 U.S.C. § 1681m(h)(8) clearly eliminated any private right of action for the alleged violations of section 1681m(d), Defendants' Motion to Dismiss Plaintiff's Second Claim for Relief is GRANTED.

III. LEAVE TO REPLEAD

Rule 15(a) of the Federal Rules of Civil Procedure requires that courts freely grant leave to amend "when justice so requires." "[I]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cohen v. Citibank,* 1997 WL 88378 at *2 (S.D.N.Y.1997). Absent a showing of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or the futility of the amendment, a plaintiff should be granted leave to replead. *See Protter v. Nathan's Famous Sys., Inc.,* 904 F.Supp. 101, 111 (E.D.N.Y.1995) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

***7** However, if an amendment would be futile, a court may deny leave to amend. *See Oneida Indian Nation of N.Y. v. City of Sherrill,* 337 F.3d 139, 168 (2d Cir.2003) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)). "A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Id.* (citing *Ricciuti v. N .Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991)).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The Court finds that it would be futile for Plaintiff to replead his claims under the FCRA. Accordingly, Plaintiff is DENIED leave to replead.

IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED and the Complaint is DISMISSED WITH PREJUDICE. The Clerk of the Court is directed to close the docket in this case.

SO ORDERED.

Slip Copy, 2007 WL 895249 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.